**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:23-cv-60033-KMM

DEVON A. BROWN,

      Plaintiff,

v.

GREGORY TONY, *et al.*,

      Defendants.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court on the Second Application to Proceed in District Court Without Prepayment of Fees or Costs, filed by Plaintiff Devon A. Brown.  ("Application") (ECF No. 18).  This matter has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters including discovery, and for a Report and Recommendation on any dispositive matters, except for motions affecting any deadlines set by the District Court's Scheduling Order.  (ECF No. 4).  Having reviewed Plaintiff's Application and being otherwise fully advised in the premises, the undersigned **RECOMMENDS** that the Application be **DENIED**, and that under 28 U.S.C. § 1915(e) the Amended Complaint be **DISMISSED** as set forth below.

## I.      BACKGROUND

This is a civil rights action under Section 1983[1] asserting violations of the First Amendment

_____

[1]  42 U.S.C. § 1983.

and the Fourteenth Amendment, arising under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

On January 9, 2023, Plaintiff Devon A. Brown initiated this suit by filing a *pro se* complaint naming Gregory Tony, in his official capacity as Sheriff of Broward County, Florida, and the Broward County Sheriff's Office ("BSO") as Defendants. (ECF No. 1). Plaintiff later filed the Amended Complaint, removing BSO as a Defendant and instead naming as Defendants: Gregory Tony ("Tony"), in his individual capacity and in his official capacity as Sheriff of Broward County, Florida; Monica Cepero ("Cepero"), in her individual capacity and in her official capacity as the County Administrator of Broward County, Florida; and Broward County, Florida (the "County").

In his Amended Complaint, Plaintiff alleged that Defendants had "implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of forcing and or ordering a suspect in the Broward Sheriff's Office care and custody to remove their religious head covering[.]" (ECF No. 5 at 1). Specifically, Plaintiff alleged that on April 3, 2019, he was arrested by BSO deputies for practicing law without a license. When he was brought to jail for booking, he was ordered to remove his religious headwear and put it in a brown paper bag in accordance with BSO policy, practice, and/or custom. Plaintiff complained that this was disrespectful to Plaintiff. He identified another individual, Rabbi Beri Zwiebel, who was also subjected to the same treatment on two occasions. Plaintiff asserted that Plaintiff's religious beliefs and convictions maintained that he should cover his head, especially on days when he is fasting like the day of his arrest.

Plaintiff alleged in his Amended Complaint that BSO has a history of requiring arrestees to remove head coverings. He claimed that the BSO policy, practice, and/or custom of requiring arrestees to remove their religious head coverings during booking was devised, implemented,

enforced, and sanctioned by Defendants and their confederates. Plaintiff contended that Defendants had acted with deliberate indifference to constitutional rights by failing to properly screen, train, and supervise BSO officers; had inadequately monitored and disciplined BSO officers; and had failed to rectify the purportedly unconstitutional practice. On information and belief, Plaintiff contended that law enforcement activities of BSO, which is maintained by the County, are funded in part by the federal government.

Accordingly, Plaintiff raised the following claims for relief in his Amended Complaint: (1) a First Amendment violation against all Defendants under Section 1983 (Count I); (2) a claim against all Defendants for violation of RLUIPA and the First Amendment (Count II); (3) a claim against all Defendants that appears to be duplicative of Count 1 except as to the relief sought (Count III); (4) a claim that contains at least four, and possibly more, sub-claims arising under Florida law for trespass, violation of the right to religious practice, violation of other rights under Florida law, and negligent hiring, screening, training, supervising, and retention of employees (Count IV); and (5) a claim asserting *respondeat superior* liability against the County for the acts and omissions of Tony and Cepero (Count V).

Upon screening of the Amended Complaint under 28 U.S.C. § 1915(e), the undersigned found that the Amended Complaint was a shotgun pleading and recommended that it be dismissed with leave to amend to correct the pleading deficiencies. On the merits, the undersigned found that Plaintiff's RLUIPA claim in Count II of the Amended Complaint lacked sufficient detail to plausibly plead substantial burden on religious exercise. As to Plaintiff's First Amendment Free Exercise Clause claims in Counts I, II, and III, the undersigned recommended that those claims be dismissed because Plaintiff had not sufficiently pled his RLUIPA claim in Count I. The undersigned further found that Plaintiff's state law claims in Count IV and V were subject to

dismissal for multiple reasons.  The undersigned recommended that Count II should be dismissed with prejudice to the extent it asserted a claim against Tony and Cepero in their individual capacities for damages and that the Amended Complaint should be dismissed with leave to amend in all other respects.

Plaintiff filed Objections.  (ECF No. 11).  The District Court overruled Plaintiff's Objections and adopted the Report and Recommendations.  (ECF No. 12).  Plaintiff's Second Amended Complaint followed.  (ECF No. 14).  The Second Amended Complaint names the following parties as Defendants: Tony, in his individual capacity; Cepero, in her individual capacity; the County; and BSO.

The Second Amended Complaint recounts the same facts alleged in the Amended Complaint and described above: Plaintiff was arrested on April 3, 2019 by BSO deputies for practicing law without a license; he was brought to jail for booking; he was required to remove his religious headwear and put it in a brown paper bag, which he believed to be disrespectful; requiring Plaintiff to remove his head covering in this way was a custom or policy of BSO; another individual, Rabbi Beri Zwiebel, was also subjected to the same treatment on two occasions; and Plaintiff's religious beliefs and convictions maintained that he should cover his head, especially on days when he is fasting like the day of his arrest.

Liberally construing Plaintiff's Second Amended Complaint, Plaintiff asserts five claims for relief: (1) the first cause of action is construed as a claim under § 1983 for violation of the First Amendment Free Exercise Clause, brought against Tony in his official capacity as the Sheriff of Broward County, for failure to train or supervise BSO deputies, ("Count 1"); (2) the second cause of action in the Second Amended Complaint is construed as asserting two separate claims under § 1983, the first being against the County for violation of the First Amendment Free Exercise

Clause, for failure to train or supervise BSO and County employees, failure to monitor County and BSO employees, and encouraging First Amendment violations, ("Count 2"); (3) the second claim asserted within Plaintiff's second cause of action is the same as Count 2 as defined by the Court, but brought against Cepero in her official capacity as County Administrator ("Count 3");[2] (4) a claim under § 1983 against BSO for violation of the First Amendment Free Exercise Clause, based on *Monell*[3] and a policy, custom, or practice of forcing arrestees to remove religious headwear ("Count 4"); and (5) a claim against all Defendants for violation of the Fourteenth Amendment's Equal Protection Clause, based upon disparate treatment between Plaintiff and Rabbi Zweibel ("Count 5"). Plaintiff seeks compensatory damages and punitive damages.

Plaintiff's Second Amended Complaint is now before the Court for screening under 28 U.S.C. § 1915(e).

## II.    LEGAL STANDARD

Under Section 1915(e), "court[s] shall dismiss [a] case at any time if the court determines that . . .  the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief," notwithstanding any filing fee or portion thereof that may have been paid.  28 U.S.C. § 1915(e)(2)(B); *see also Mehmood v. Guerra*, 783 F. App'x 938, 940 (11th Cir. 2019) (emphasis added) ("[U]nder § 1915(e), district courts have the power to screen complaints filed by all IFP litigants, *prisoners and non-prisoners alike*.").

The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) governs a dismissal under § 1915(e)(2)(B)(ii).  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

---

[2] Though Cepero is named in her individual capacity in the case caption of the Second Amended Complaint, the claim against her in essence seeks to impose *Monell* liability and thus the Court construes the claim as an official-capacity claim.

[3] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

Dismissal under Rule 12(b)(6) is appropriate when the facts as pled do not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009). In addition, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," *Nietzke v. Williams*, 490 U.S. 319, 327 (1989); when the claims rely on "clearly baseless" factual allegations, *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); or, when the plaintiff ostensibly has little or no chance of success, *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1979) (internal quotations and citations omitted). In determining whether to dismiss a *pro se* plaintiff's complaint, the allegations are taken as true and are construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a plaintiff is not held to a high standard in a motion to dismiss for failure to state a claim, the Federal Rules require "a short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds it rests upon. *See* Fed. R. Civ. P. 8(a); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Moreover, "[u]nder § 1915(e)(2)(B)(ii), a district court must dismiss a case in which the plaintiff is proceeding in forma pauperis if the court determines that the complaint fails to state a claim on which relief may be granted." *Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). Although district courts must liberally construe *pro se* pleadings, courts are not required to rewrite complaints to create a viable cause of action where one does not otherwise exist. *GJR Invs. v. Cnty. of Escambia*, 132 F. 3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### III.    DISCUSSION

#### A.    Defendant BSO Must Be Dismissed

The Court has construed Plaintiff's fourth claim—Count 4—as a § 1983 claim against BSO

for violation of the First Amendment Free Exercise Clause, based on *Monell* and a policy, custom,

or practice of forcing arrestees to remove religious headwear.  In Count 5, Plaintiff has asserted a

Fourteenth Amendment Equal Protection Clause claim against all Defendants, including

Defendant BSO.  All claims asserted in this action against Defendant BSO are subject to dismissal

because BSO is not a legal entity that can sue or be sued under Florida law.  *See Faulkner v.*

*Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (citing *Fla. City Police*

*Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995)) ("Florida law has not established

Sheriff's offices as separate legal entities with the capacity to be sued.  Thus, the district court did

not err by dismissing Faulkner's claim against MCSO because MCSO is not a legal entity with the

capacity to be sued under Florida law.").  Accordingly, I recommend that Count 4 be dismissed

and that Count 5 be dismissed as against Defendant BSO with prejudice.

#### B.    First Amendment Claims

Liberally construed, Plaintiff brings First Amendment Free Exercise Clause claims against

Tony, Cepero, and the County in Counts 1, 2, and 3.

#### Counts 1, 2, and 3

Though the Second Amended Complaint names Cepero and Tony as defendants in their

individual capacities, Plaintiff's claims are asserted against Cepero and Tony in their official

capacities.  As noted above, Count 1 is a § 1983 claim for violation of the First Amendment Free

Exercise Clause; it is expressly brought against Tony in his official capacity as the Sheriff of

Broward County, for failure to train or supervise BSO deputies.  Plaintiff's second claim has been

construed as containing a § 1983 claim against Cepero, in her official capacity, for violation of the First Amendment Free Exercise Clause, based on failure to train or supervise BSO and County employees, failure to monitor County and BSO employees, and encouraging First Amendment violations—the Court has notated this claim as "Count 3."[4]  In addition, Plaintiff's second cause of action in the Second Amended Complaint has been construed as asserting a claim under § 1983, against the County, for violation of the First Amendment Free Exercise Clause, for failure to train or supervise BSO and County employees, failure to monitor County and BSO employees, and encouraging First Amendment violations.

Plaintiff has sued Broward County in addition to Tony and Cepero in their official capacities as Sheriff and County Administrator of Broward County, respectively.   These claims—Counts 1, 2, and 3—are all *Monell* claims.  As was explained in *Pestana v. Miami-Dade County Board of Commissioners*:

> When an official is sued under Section 1983 in his official capacity, "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'"  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978))).  "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents."  *Id.* (citing *Graham*, 473 U.S. at 165–66, 105 S. Ct. 3099).  "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)."  *Id.* (citing *Graham*, 473 U.S. at 166, 105 S. Ct. 3099).
>
> Thus, it is clear that if Plaintiff is attempting to state a claim against the Director of the Miami–Dade Corrections Rehabilitation Department in his official capacity, the proper Defendant is the municipal entity for which that individual works.  *See id.* Typically, a plaintiff will state identical "official capacity" and "municipal liability" claims, and the district court will simply dismiss the official capacity

---

[4]  As noted above, Cepero is named in her individual capacity in the case caption of the Second Amended Complaint. Count 3 in essence seeks to impose *Monell* liability against her and thus the Court construes the claim as an official-capacity claim.

claims as duplicative of the municipal liability claims.  *See Perez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 917 F.Supp.2d 1261, 1265–66 (S.D. Fla. 2013).

*Pestana v. Miami-Dade Cnty. Bd. of Commissioners*, 282 F. Supp. 3d 1284, 1288–89 (S.D. Fla. 2017).  Count 2 is a claim against the County and thus it is a *Monell* claim.  Count 3 is necessarily a *Monell* claim because it is brought against Cepero in her official capacity as County Administrator.  The Court further presumes at this stage that Count 2 against Tony is a claim against the County.  *See Freyre v. Chronister*, 910 F.3d 1371, 1381–82 (11th Cir. 2018) (observing for purposes of Eleventh Amendment immunity analysis that Florida sheriffs are "by default" county officers while recognizing that when carrying out certain functions a sheriff may be acting as an arm of the state); *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("When, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, Monroe County.").

Under *Monell* and § 1983, local governments are liable only for their own acts and are not vicariously liable for the actions of their employees.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  As the Supreme Court has explained:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  *Monell*, 436 U.S., at 691, 98 S. Ct. 2018; *see id.*, at 694, 98 S. Ct. 2018.  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  *See ibid.*; *Pembaur*, *supra*, at 480–481, 106 S. Ct. 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  These are "action[s] for which the municipality is actually responsible."  *Pembaur*, *supra*, at 479–480, 106 S. Ct. 1292.

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the

> constitutional violation, than was the policy in *Monell* ").  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Canton*, 489 U.S., at 388, 109 S. Ct. 1197.  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *Id.*, at 389, 109 S. Ct. 1197.

*Connick*, 563 U.S. at 60–61.  However, absent a valid underlying constitutional violation, the Court need not address whether liability extends to the municipality.  *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1170–71 (11th Cir. 2009) ("Absent a constitutional violation, we need not explore whether [the municipality's] policies regarding crisis intervention training violated [the plaintiff's] constitutional rights.").

Counts 1, 2, and 3 allege violations of the First Amendment Free Exercise Clause.  "The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'"  *Carson ex rel. O. C. v. Makin*, 142 S. Ct. 1987, 1996 (2022) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988).  Under Supreme Court precedent, generally, "a plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"  *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022) (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879–81 (1990)).  As the Eleventh Circuit has explained:

> To plead a claim for relief under the Free Exercise Clauses of the U.S. and Florida Constitutions, a plaintiff "must allege that the government has impermissibly burdened one of [its] 'sincerely held religious beliefs.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007).  This belief must be "rooted in religion," since "personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause."  *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012) (quoting *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 833, 109 S. Ct. 1514, 103 L .Ed. 2d 914 (1989)).  We have read this pleading requirement as having two components: "(1) the plaintiff holds a belief, not a preference, that is

10

sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Id.* at 1256–57[.]

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1246 (11th Cir. 2019).

Firstly, the charging paragraphs for Counts 1, 2, and 3 do not incorporate the facts alleged in Plaintiff's statement of facts. Instead, Counts 1 and 2 describe Plaintiff's constitutional violation as "the practice;" and "policies, practices, and or customs." (ECF No. 14 at ¶¶ 6, 7). Count 3 identifies a "policy, custom or practice that forced arrested suspects to remove their sincerely held head gears." (*Id.* at ¶ 6). As drafted, Counts 1, 2, and 3 make no showing that the "policy" impacts Plaintiff's ability to hold his belief or act pursuant to his belief. *Cambridge Christian Sch., Inc.*, 942 F.3d at 1246.

Next, even if Counts 1, 2, and 3 were construed liberally to include Plaintiff's statement of facts, Plaintiff still has not alleged that the policy impacts his ability to hold his religious beliefs or act pursuant to his beliefs. Rather, Plaintiff alleges in a conclusory manner that his "religious beliefs and conviction maintains that his head should be covered, especially when he is fasting; like on the day of his arrest." (ECF No. 14 at ¶4). Plaintiff again fails to specify that his religious beliefs were violated upon compliance with the policy. *See e.g.*, *Von Lochausen v. Escambia Cnty. Jail*, No. 3:21CV1053/LAC/EMT, 2021 WL 12188441, at *7 (N.D. Fla. Dec. 20, 2021) (finding allegations failed to state a "plausible free exercise claim" where Plaintiff failed to allege that the conditions alleged "deprived him of a reasonable opportunity to hold his religious belief or practice.").

Indeed, Plaintiff's free-exercise claim employs identical allegations to those previously found insufficient to state a claim under the RLUIPA in his First Amended Complaint, thereby

dooming his Second Amended Complaint to fail.  (ECF No. 9).  The Eleventh Circuit has observed that "[i]f a claim fails under the RLUIPA—which embeds a heightened standard for government restrictions of the free exercise of religion—it necessarily fails under the First Amendment." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).   Therefore, those unchanged allegations remain insufficient to set forth a claim under the First Amendment's Free Exercise Clause in the Second Amended Complaint now.  *See id.*; *see also Pace v. Lawerance*, No. 19-22928-CV, 2020 WL 6064876, at *7–8 (S.D. Fla. Sept. 25, 2020), *report and recommendation adopted sub nom. Pace v. Lawrence*, No. 19-22928-CV, 2020 WL 6059804 (S.D. Fla. Oct. 14, 2020) (dismissing claims for violation of RLUIPA and the Free Exercise Clause where the plaintiff was temporarily deprived of religious items and the ability to perform obligated daily prayer for more than 7 days but where the plaintiff did not allege he was unable to complete his religious obligations once his religious items were returned to him).

Thus, Plaintiff has not set forth a valid constitutional violation underlying the alleged *Monell* liability in Counts 1, 2, and 3.  *Garczynski*, 573 F.3d at 1170–71. Counts 1, 2, and 3 should be dismissed, without prejudice.

### C.      Fourteenth Amendment Claim

In Count 5, Plaintiff asserts a claim against all Defendants for violation of the Fourteenth Amendment's Equal Protection Clause, based upon disparate treatment between Plaintiff and Rabbi Zweibel.  Plaintiff's Second Amended Complaint states:

> Here, Plaintiff was arrested and went through the same set of First Amendment religious violation, as another person, and both were forced to remove their religious headgear.  Yet, the Rabbi got some sort of justice/settlement, and here Plaintiff has not been offered any kind of justice.  This is violation of the, "Equal protection clause" of the Fourteenth Amendment.

(ECF No. 14 at 4).

"The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). "Whenever the law classifies and treats people differently, then, we have occasion to ask whether the equal protection of the law has been violated.  But the 'Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Jones v. Governor of Fla.*, 950 F.3d 795, 808 (11th Cir. 2020) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).  However, Count 5 is too vague to assess; it lacks sufficient detail to ascertain what conduct Plaintiff complains of and how that conduct is related to any purported violation of the Fourteenth Amendment Equal Protection Clause.  The Second Amended Complaint contains no detail describing how any municipal policy, custom, or practice of the County classified or categorized Plaintiff on the basis of any suspect class or in a way that burdened any fundamental right.  Indeed, though Plaintiff identifies the Rabbi as someone who received "some sort of justice/settlement," no facts have been alleged to suggest that Plaintiff did not receive that same result due to classification based on a suspect class.  The claim should be dismissed without prejudice.

## IV.    RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that

(1) Plaintiff's Application to Proceed in District Court Without Prepayment of Fees or Costs (ECF No. 18) be **DENIED**;

(2) Plaintiff's Second Amended Complaint (ECF No. 14) be **DISMISSED,** with prejudice, as to those claims against Defendant, BSO, and **DISMISSED**, without prejudice, as to the remaining claims.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, on this 23rd day of July, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:

Honorable K. Michael Moore

Devon A. Brown
5457 Lynn Lake Drive S.
Apt. A
St. Petersburg, FL 33712
PRO SE